May it please the court, opposing counsel. My name is MJ Hayden. I'm with the Federal Public Defender's Office for the District of Alaska, and I represent David Puher. We're here today because Mr. Puher alleges that the District Court erred in applying a two-level adjustment for obstruction of justice under U.S. Sentencing Guidelines 3C1.1. 3C1.1 calls for an upward adjustment if the defendant willfully obstructed or impeded or attempted to obstruct or impede the administration of justice during the course of the investigation, prosecution, or sentencing of the incident, offense, or conviction. The application notes following this adjustment explains that one method of obstructing justice is to threaten, intimidate, or otherwise unlawfully influence a co-defendant, witness, or juror directly or indirectly or attempting to do so. The court applied the obstruction of justice enhancement in Mr. Puher's case on two grounds. The first ground was based on attempted phone calls made from the jail to the victim's residence in this case. The second ground was the court's conclusion that Mr. Puher was malingering regarding his competency during a mental health evaluation. I'd first like to address the phone calls. The phone calls here, it was recommended in the pre-sentence report that Mr. Puher receive the enhancement based on the fact that a series of phone calls extending over five days were made from the jail to the victim's house. During one of these calls, while the operator was talking, the victim was able to hear and identify Mr. Puher's voice in the background. The court, I believe, misinterpreted the guidelines by omitting the mens rea requirement of willfulness when it applied the enhancement to Mr. Puher. What would have been the other reason that he would have called those persons? He could have been calling them, again, to ask for the money, which would have been continuing criminal conduct, but not necessarily amounting to obstruction. That would be fairly intimidating, though, wouldn't it not? If he's still asking for the $40,000, and he's saying it in such graphic terms that if you don't pay the $40,000, you're in big trouble. Well, Your Honor, in this court, in a case called Laughlin, held that mere continuous criminal activity while awaiting sentencing is insignificant to justify the enhancement. In that case, the defendant was in custody for wire fraud, I believe, or telephone fraud, and continued the fraud while he was in custody. And the court held that just based on... To the same people? I'm clear on that, Your Honor. I don't believe it was to the same people. I'm just saying, in terms of the actual evidence, we basically have some phone calls. Is that what it boils down to? But we don't know... But there's no content. There's no content, Your Honor. There's no content that's in front of the court from which we could make, or the district court could reasonably make, a determination. That's correct, Your Honor. The phone calls were never completed. The victims say that they heard the defendant's voice in the background while the operator was attempting to make the connection, but there was never any contact between Mr. Ford and the victims. So we don't know... We don't know the purpose of the phone calls. And the only thing we have is some swearing that may have been heard, overheard. That was what was recounted in the PSR. I believe there was an FBI agent that testified in court, and he did not know what the victims had heard in the background. He just claimed that they knew it was the defendant's voice. I assume that we could... The judge could have drawn a reasonable inference that this individual made the phone calls. Yes, Your Honor, and the judge did do that. And could a reasonable inference be drawn that the defendant should reasonably have known that any phone call from him, and again, continuing to do them over a period of five days, just the fact of attempting to make the phone calls could intimidate the victims? Well, what the court concluded here in our argument is that because the court made certain findings, and that being, number one, that the defendant did indeed place these phone calls from the jail to the victim's residence, and number two, that based on the nature of the instant offense that the defendant was incarcerated for, that the phone calls did indeed put the victims in fear. What the court didn't do was address the mens rea, the purpose of the phone call. Well, my question was whether the judge could infer that the defendant should know that this would put the victims in fear, no matter what he wanted to say to them on the phone. Yes, ma'am, I believe that the court could do that. However, the court did not do that here. The court didn't address the mens rea issue whatsoever. And that's part of the reason why we're here, is we feel that this case needs to be remanded so that the court can do that. The second issue, or the second basis for the finding of the obstruction of adjustment, obstruction of justice enhancement was that the defendant had malingered in regards to a competency exam. And the basic issue that we want to address there is the notice. Here, it didn't appear in the PSR that this would be a grounds for obstruction. And it was midway through the sentencing hearing before the court let the parties know that the court might be considering that as a ground. We feel that the counsel did not get adequate notice that the court was going to use this as an enhancement. And we rely on Burns v. U.S. and Rule 32, in addition to 6A1.3 of the sentencing guidelines, that adequate notice must be given to allow the parties time to argue and present evidence if need be. There certainly was discussion of the fact of malingering. It just hadn't been tied to the obstruction of justice claim. Is that correct? That's correct, Your Honor. There was a report, I think, submitted from Butner, SCI Butner, that described the defendant's mental health state as malingering on the competency evaluation. There were actually two evaluations. The first one ordered by the court on motion of the government that suggested to the court that there was a problem involving his competency. The defense counsel had an independent evaluation that was very similar to the government's evaluation. And then both parties made a joint stipulation that he be sent to Butner to be examined. I'm trying to figure out what the practical effect is of the notice argument. I mean, we have these cases that say, even if they tell you at the beginning of the hearing, okay, this is what's on the table, that that's sufficient notice. So what would be the principle that you would have us draw from your argument? Well, Your Honor, first of all, I think in this particular case on these facts, had defense counsel known that the malingering was going to be the subject of an enhancement, that he would have been able to present testimony from one of the first two psychiatrists or psychologists that evaluated the defendant and found that he wasn't malingering. Did he ask for extra time? No, ma'am, he did not. So what do we do then? I mean, it does seem unfair in principle that it gets sprung on you. But then what you're supposed to do is say, I need a continuance so I can call the shrink to come in here. So that didn't happen. Of course, by the time they get here, it usually means something didn't happen quite right. But what kind of standard of review do we give that and how do we evaluate it? Well, I think the standard of review, because he didn't ask for a continuance and he didn't object, would be clear error. All right. We'll hear from the United States. Good morning. May it please the Court. Steve Lane for the United States. Initially, I just want to address a procedural issue that came to my attention earlier this week. As I was reviewing the briefs, I noticed that Mr. Poorer's 50-month sentence appeared to be set to expire in January of 2004, which prompted me to contact the Bureau of Prisons, who subsequently informed me that Mr. Poorer's good conduct release date is currently slated for September 19th. And since that's only three and a half months from now, I wanted to bring it to the Court's attention. Thank you very much. In our view, the enhancement should be affirmed for either or both of the reasons relied on by the district court. With respect to the malingering, as counsel has acknowledged, the defendant did not object to the lack or purported lack of notice in the hearing. He also did not raise the underlying constitutional objection in the district court, and therefore, both the notice-based objection and the constitutional claim are subject to review only for plain error at this stage. In our view, the Hernandez case on the notice issue, the Hernandez case cited in our brief, establishes that there was no error, plain or otherwise, in the notice that was provided by the district court during the sentencing hearing itself. The defendant hasn't identified any cases, and I have not seen any cases that establish that pre-hearing, as opposed to pre-imposition of sentence, notice is required under circumstances such as these, where the defendant does not ask for more time. As discussed in our brief, the Supreme Court's decision in Burns in Rule 32, which incidentally was modified on December 1st of the past year to expressly incorporate the Burns requirement, simply requires adequate notice, both Burns and the newly, I think it's Rule 32, it's either H or J in the new rule, but anyway, it incorporates the essence of the Burns decision. Well, counsel didn't have any opportunity to go and look up the cases as to whether malingering could constitute obstruction of justice. That's right, Your Honor. And candidly, a pre-hearing notice would be better. The question is whether hearing notice during the hearing is sufficient. And in this case, the defense didn't object, and I think that's because the defense was aware going into the hearing, both that obstruction of justice enhancement was on the table, albeit for a different reason, and the defense itself had put the defendant's mental state at issue for sentencing. That's the reason why Mr. Poore was sent back to F.C.I. Butner. That was at the request of the defendant, because the defense argued that his mental status should be taken into account as a sentencing factor. Obviously, they thought it should be a mitigating factor, but the fact of the matter is they weren't entitled to a favorable evaluation. And in our view, there was no objection because the defense couldn't have been, and in fact was not surprised going into the hearing that this came up. Looking at claim error, I guess, what cases do you have that show that malingering is a basis for an adjustment on the basis of obstruction of justice? There aren't too many cases. The Greer case cited in our brief, and I think that's a Fifth Circuit case, is, I think, the case that the only case that really squarely addresses the issue and, in fact, involves conduct quite similar to the defendant's conduct here. There is, incidentally, in the Greer case, discussion of other conduct by the defendant, but review of the decision makes clear that that other more, I guess, flagrant conduct wasn't considered as part of the obstruction enhancement. But this Court has not addressed the issue, to my knowledge. The fact is the guideline itself makes clear that a fairly broad range of conduct can qualify as obstruction of justice. And clearly, it's hard for me, at least, I can't envision a situation in which attempting first to feign mental problems for purposes of establishing incompetence to stand trial, and then later doing the same thing in order to try and affect the sentencing, it's hard to envision a circumstance in which that wouldn't be obstruction of justice under the plain terms of the guideline. Incidentally, around the Hernandez case on the plain error issue, we believe it sort of provides the controlling framework here for the type of notice that is provided. Here, as in Hernandez, the District Court, before making any findings or determinations or imposing sentence, notified the parties of its intention. In that case, it was to make a sua sponte departure where no departure at all had been recommended. That Hernandez establishes that notice of that kind of departure before the Court has made findings, as long as the Court provides the parties an opportunity to be heard, is sufficient. And that's exactly what we have here. And here, we've got an enhancement that, in fact, was recommended in the PSR, again, albeit on a different ground, but involving an alternative ground that the defendant himself put at issue. So if the notice was good enough in Hernandez, it necessarily has to be good enough here. With respect to the post-arrest telephone calls, which in our view provide an alternative basis for upholding the enhancement, the PSR does conclude expressly that by making these series of telephone calls, the defendant, quote, attempted to indirectly intimidate, close quote, the victims further. You know what? These do bother me, and I'll explain why, and then maybe you can help me. I read the Second Circuit case, which is the other Hernandez case, saying that the screaming and hollering really wasn't enough. And there, I think they called up, or at least saw the witness, and called him the devil, and quite a bit more. And they were really tangible things. Here, we don't have any evidence of anything other than that the phone calls were made. And so the difficulty I have is whether one could conclude that there's the requisite intent shown simply by making the phone calls. Because that's the only real evidence on the record is phone calls were made. And, you know, it's not illegal to make phone calls in general. And maybe he was calling up to threaten him and change his mind. Maybe he was calling up to say he was sorry. We just don't know. Well, Your Honor, first of all, as the defendant concedes in his opening brief, the Hernandez case in the Second Circuit was decided when the guideline had a much more defendant-friendly standard, which they cite in their brief. Right. But factually, Your Honor, you know, circumstantial evidence and ambiguous conduct is often, if not almost always, going to be the only evidence of intent. Defendants aren't usually going to acknowledge that they intended their conduct to intimidate or to threaten or otherwise to obstruct justice. But usually you'd have content. So my real question is, you know, if you had content, even if it was slightly innocuous, you might be able to infer intent. But we don't have any content. So we have only the mere fact that there was a connection. That's it. Well, you also, Your Honor, have the fact that the underlying offense for which the defendant pled guilty was itself a threatening phone call, admittedly threatening phone call, to the very same people. I think we have another problem here, though, counsel, in that the Court did not make a finding on intent, which I think is essential. Should we send it back for that? No, Your Honor. I don't think so, because in Gardner, the Court made clear that the district court doesn't need to make an express finding of intent and doesn't need to explain its conclusion that the defendant had the obstructive intent. And incidentally, in that case, the case was remanded for resentencing, but that was because the court, the district court made a statement that showed that he believed that no mens rea was required at all. We didn't just have the absence of an express finding of mens rea. But here you also have the express adoption by the district court of the pre-sentence report or probation's analysis as set forth in the pre-sentence report. And, you know, that is a legitimate way for the district court to resolve disputed sentencing issues, such as adoption of the pre-sentence report analysis. But I don't put much credence in the statement that it was an indirect threat. I mean, that's just a conclusion. It isn't backed up by any factual evidence. Conceivably, there is no further factual explanation in the PSR, and it would be better if there were. But in our view, it's not required, especially since the circumstances here, the prior phone call being the most important one, in my view, and then the absence of any indication of any other intent. You mean the prior phone call being the underlying offense. And it's much like a 404B kind of situation where, you know, the government at trial can introduce evidence of past crimes or prior acts to establish things like intent, and that's exactly what we have here. And it really was not, for that reason, unreasonable for the district court or probation to conclude, based on all the circumstances, that he did have the obstructive intent. These calls were placed, were they not, before he entered his plea of guilty? That is correct, Your Honor. That casts another possible inference that he was seeking to intimidate them as witnesses. And as one of the questions to opposing counsel suggested, I mean, he was surely aware under the circumstances that his calls would have this effect. I mean, that is just not a stretch of an inference to make. And I see that I'm out of time, so. Let me just ask one thing by way of clarification. He makes two findings in the colloquy, and that is that these were threatening or would have the effect of being threatening. And he doesn't actually make an intent finding. But you're saying that, under Gardner, that you don't need to make that finding? The way I read Gardner, Your Honor, is that the court does not need to make an express finding of intent. He just needs to make the finding that, you know, that the guideline is satisfied. And absent some indication that the court is applying the wrong standard, which, in fact, you had in Gardner but don't have here, that's good enough. Thank you. Thank you. If I could just briefly touch on a few issues, and the first one would be Hernandez as it applies to notice. And basically Hernandez involved a departure under a specific guideline in Chapter 2 that applied to a specific offense. And what we're dealing with here is Chapter 3 that applies to all offenses. So the application of an enhancement in Chapter 3 is much more broad than those of a specific guideline in Chapter 2. If I were to find that either of these grounds was legitimate, would that mean the sentence would stand? Yes. Could he have negated the inference that we're talking about by explaining at the time of sentencing what his purpose in calling was? I believe at the sentencing hearing the facts were that the defendant didn't recall making the phone calls. So I don't know how his attorney would have explained it. And with regard to the court adopting the pre-sentence report regarding the phone calls, the statements in the pre-sentence report are conclusory, and basically what the PSR writer said was that the phone calls could be perceived as an attempt. So I don't think that the fallback of adopting the PSR satisfies the required mendrea. Thank you. The United States v. Poor is submitted.
judges: Hug, B Fletcher, McKeown